**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MICHAEL J. SCHWARTZ,

    Plaintiff,

v.

TOWNSHIP OF TOMS RIVER, et al.,

    Defendants.

Civ. No. 16-3770 (MAS) (LHG)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court on two motions for summary judgment: (1) Defendants Township of Toms River, Toms River Town Counsel, Toms River Mayor's Office, Maria Maruca ("Maruca"), Louis Amaruso ("Amaruso"), Thomas F. Kelaher ("Kelaher") ("Township Defendants") (ECF No. 17); and (2) Defendants Mitchell A. Little ("Little"), Michael Belcher ("Belcher"), and the Toms River Police Department ("Police Department Defendants") (collectively, "Defendants") motion for summary judgment (ECF No. 18). Plaintiff Michael J. Schwartz ("Schwartz" or "Plaintiff") opposed (ECF Nos. 23, 24) and Defendants replied (ECF Nos. 25, 26).

The Court has carefully considered the parties' submissions and decides this matter without oral arguments pursuant to Local Civil Rule 78.1. For the reasons set forth below, Defendants' motions are granted.

**I.    Background**

Plaintiff was the founder of Hometown Heroes, a local charitable organization, and a volunteer auxiliary police officer in the Toms River Township Police Department ("TRPD").

(Police Defs.' SUMF ¶¶ 1-3, ECF No. 18-3.)  In March of 2014, Plaintiff went to the Mayor's Office to complain about an ongoing parking issue where Plaintiff's employees were receiving parking tickets in downtown Toms River. (Twp. Defs.' Statement of Undisputed Material Facts ("SUMF") ¶ 1, ECF No. 17-1.)[1] Although Plaintiff requested a meeting with the Mayor, he did not receive a response. (Pl.'s Resp. to Twp. Defs.' SUMF and Counter-Statement of Material Facts ("CSMF") ¶¶ 33-34,[2] ECF No. 22.)[3] After becoming frustrated with the process, on March 24, 2014, Plaintiff prepared a "symbolic" invoice charging the Mayor's Office for Plaintiff's employees' parking tickets. (*Id.* ¶ 35.)  Plaintiff dropped off the invoice to Mayor Kelaher's secretary, Lynda Valeri. (*Id.*; Police Defs.' SUMF ¶ 6, ECF No. 18-3.)  Ms. Valeri was upset following the interaction. (Pl.'s Resp. to Twp. Defs.' SUMF and CSMF ¶ 38.) Plaintiff did not

---

[1] Pursuant to Local Civil Rule 56.1, the moving party's statement of undisputed facts must be in a *separate* document and not contained within a brief. *See* L.Civ.R. 56.1. While the Township Defendants included a separate section with numbered paragraphs within the brief, this is in violation of the rules. The Court will nevertheless accept the SUMF contained within the brief for purposes of this motion, but expects future compliance with the Local Rules.

[2] Plaintiff responded separately to each statement of facts and added his own Counter-Statement of Facts in the same document with continuous numbering. Plaintiff's Counterstatements, therefore, begin at paragraphs 21 and 26, respectively. (Pl.'s Response to Police Defs.' SUMF and CSMF, ECF No. 24; Pl.'s Resp. to Twp. Defs.' SUMF and CSMF, ECF No. 22.)

[3] Plaintiff's responses to Defendants' SUMFs are completely devoid of any citations. The Local Civil Rules require Plaintiff to cite to competent record evidence in order to dispute a fact. L.Civ.R.56.1 ("The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and *citing to the affidavits and other documents submitted in connection with the motion*; any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion.") (emphasis added). In addition, although Plaintiff "disputes" several facts "as stated" "for the reasons set forth [in Plaintiff's supplemental facts]," (*see* Pl.'s Resp. to Twp. Defs.' SUMF and CSMF ¶¶ 4-23; Pls.' Resp. to Police Defs.' SUMF and CSMF ¶¶ 3-22), Plaintiffs' own version of the facts contain the same information. Nevertheless, the Court has searched the record to appropriately determine the undisputed facts before it and sets forth the relevant facts here. For efficiency, the Court omits duplicative citations.

receive a response and his employees received additional parking tickets. (*Id.* ¶ 44.) On April 3, 2014, Plaintiff brought a second invoice to the Mayor's Office and said if it was not addressed, he would bring the issue up to the media and at a council meeting. (*Id.*)

The Mayor was not back in the office until April 7, 2014. After a media inquiry to the Mayor's office about the parking situation, employees of the Mayor's Office and the Parking Authority exchanged e-mail messages about the situation. (*Id.* ¶¶ 46-53.) On April 7, 2014, the Director of the Toms River Parking Authority advised the Mayor that Plaintiff received fifty-two parking tickets over the previous five years and two of them were outstanding and unpaid. (*Id.* ¶ 53.) On the same day, the Mayor's Office made a harassment complaint about Plaintiff to the Police Department based on his interactions with the Mayor's assistant. (*Id.* ¶¶ 54-55, 63.) No civil or municipal complaint resulted from the call. (*Id.* ¶ 70.) Also on April 7, 2014, Chief Little opened an internal affairs investigation into Plaintiff. (*Id.* ¶ 71; Certification of Joseph DiRenzo, Ex. I, ECF No. 23-5.) The reportable incident form documenting Chief Little's complaint indicated that Plaintiff repeatedly complained about parking tickets and represented to parking authority personnel that he was a township employee to "obtain[] the pecuniary benefit of having some of his parking tickets dismissed." (Certification of Joseph DiRenzo, Ex. I, ECF No. 23-5.) The report was received by Lieutenant Belcher of Internal Affairs on April 8, 2014.

As Plaintiff had not received a response from the Mayor's Office, he decided to address the parking issue at the April 8, 2014 town council meeting. (Pl.'s Resp. to Twp. Defs.' SUMF and CSMF ¶ 71.) Before the meeting, Chief Little told Plaintiff that there was a complaint filed against him for his interaction with the Mayor's secretary (Tr. of Pl.'s Dep., Twp. Defs.' Opp'n Br. Ex. A., 25:2-10, ECF No. 18-2) and that if the meeting got out of hand, the chief himself would "handle it." (*Id.*; Pl.'s Resp. to Twp. Defs.' SUMF and CSMF ¶ 74.)

3

Plaintiff spoke at the meeting for his allotted five minutes. (*Id.* ¶ 77.) Other business owners also addressed the same concerns. (*Id.* ¶ 78.) The following day, Plaintiff was advised of the Internal Affairs investigation against him. (*Id.* ¶ 86.) By April 23, 2014,[4] Lieutenant Belcher advised Plaintiff that he was being separated from the Auxiliary Police as a result of the Internal Affairs investigation. (*Id.* ¶ 97.) Officer Schwartz was advised to return his identification, badge, and patches by April 28, 2014. (Certification of Joseph DeRenzo, Ex. Q, ECF No. 23-15.) Plaintiff advised Lieutenant Belcher that he would be in contact with his attorney regarding the separation. (*Id.*)

On April 28, 2014, Plaintiff requested an appeal of the IA findings. (Pl.'s Resp. to Twp. Defs.' SUMF and CSMF ¶ 100.) Only July 1, 2014, Plaintiff filed a tort claim notice against Defendants Belcher, Maruca, Amaruso, Little, Kelaher, Toms River Police Department, Toms River Town Counsel, and Toms River Mayor's Office. (Compl. ¶ 29; Twp. Defs.' SUMF ¶ 12.) On July 3, 2014, the Township again requested, through its counsel, that Plaintiff return his badge, identification card, uniform and equipment it provided. (*Id.* ¶ 101; Certification of Joseph DiRenzo, Ex. S, ECF No. 23-12.)[5]

In November 2014, Plaintiff was the campaign manager for the newly elected mayor of Manchester, Mayor Palmer. (Pl.'s Resp. to Twp. Defs.' SUMF and CSMF ¶ 107.) Mr. Schwartz said Mayor Palmer told Schwartz he planned to appoint him Business Administrator for

---

[4] There are also indications in the record that Chief Little terminated Plaintiff from the Auxiliary Police on April 10, 2018.

[5] Plaintiff claims without citation that he complied with the request to return property and that the return of property "marks the involuntary separation between Mr. Schwartz and Toms River Township." (Twp. CSMF ¶¶ 102-03.) Plaintiff cites to a Township policy that requires employees to return Township property upon separation to support this contention. Further, although Plaintiff claims he returned all Township property, it is undisputed that he was still in possession of expired Auxiliary Police identification cards when he was pulled over in Manchester over two years later. (Police Defs.' Moving Br. 2; Pl.'s Dep. Tr. 80:22-24, ECF No 18-2.)

4

Manchester at a salary of $95,000 per year. Schwartz asserts that in early 2015, he was provided with a list of meeting dates for the Manchester Township Emergency Operations Team for the year (*id.* ¶ 111) and with copies of inter-office memoranda (*id.* ¶ 112). Schwartz claims, however, supported only by his own deposition testimony, that the Mayor of Manchester told Schwartz that he "received a series of phone calls from members of the Toms River government who were objecting to Mr. Schwartz being hired because he had raised legal concerns relating to his termination from the Toms River Police Auxiliary." (*Id.* ¶ 113.) A week later, Mayor Palmer advised Plaintiff that he would not be appointed as the Business Administrator. (*Id.* ¶ 116.) According to Plaintiff, Mayor Palmer never told him who made the phone calls. (Twp. Defs.' SUMF ¶ 21.) Notably lacking from the record is any testimony or declaration from Mayor Palmer on this topic. Further, Plaintiff could not identify any person from Toms River that communicated with Mayor Palmer regarding Plaintiff's appointment. (Pl.'s Tr.: 52:20-53:2.)

Over a year later, in September 2016, months after this lawsuit had been initiated, Plaintiff was pulled over for speeding in Manchester. (Pl.'s Resp. to Twp. Defs.' SUMF and CSMF ¶ 117.) Plaintiff advised the officer that he was formerly an auxiliary police officer in Toms River. (*Id.* ¶ 118.) The Manchester officer called Toms River to confirm whether Plaintiff had been an auxiliary police officer. Toms River sent Officer Scali to the scene of the stop. Officer Scali seized a wallet badge that identified Plaintiff as an Auxiliary Police Officer in Toms River. (*Id.* ¶ 115.) Plaintiff had apparently purchased the wallet badge with his own money. (*Id.*)

On June 27, 2016, Plaintiff filed his Complaint. Plaintiffs' Complaint sets forth the following causes of action: (1) 42 U.S.C. § 1983 ("Section 1983") Violation of Plaintiff's First and Fourteenth Amendment Rights to freedom of speech, expression, association, and assembly

5

(against all Defendants);[6] (2) Punitive Damages for Violation of Section 1983 (against Defendants Maruca, Kelaher, Little, Amaruso, and Belcher); (3) Defamation (against Defendants Kelaher and Toms River Township); (4) Intentional Interference with a Business Relationship (against Kelaher and Toms River Township); and (5) False Light (against Kelaher and Toms River Township).

In Plaintiff's opposition, he acknowledges that the record does not support "claims against Toms River Township and Defendants Kelaher, Maruca, and Amaruso that have not been opposed herein." (Pl.'s Opp'n to Twp. Defs.' Br. 26-27, ECF No. 23-18.) Plaintiff specifically recognizes that this includes: (1) the Section 1983 claim against Amaruso; and (2) Defamation and False Light claims against Toms River and Kelaher. (*Id.*) The Court, therefore, grants Summary Judgment to Defendants on Count Three and Four. Plaintiff does not identify which claims he no longer opposes against Maruca, however, the only claims asserted against Maruca are Counts I and II. As Plaintiff's opposition did not argue that the Section 1983 claim against Maruca should survive, and as Plaintiff indicated that he was waiving the claims he did not oppose in his opposition brief, the Court grants Summary Judgment on the Section 1983 claims against Maruca.

The only remaining claims, therefore, are: Section 1983 claims against all Defendants except Amaruso and Maruca; and Intentional Interference with a Business Relationship claim against Kelaher and Toms River Township.

## II. Legal Standard

Summary judgment is appropriate if the record demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A material fact, a fact "that might affect the outcome of the suit under the governing law," *id.* at 248, raises a

---

[6] Plaintiff identified the relevant Defendants by the "Wherefore" statement at the end of each Count.

6

"genuine" dispute if "a reasonable jury could return a verdict for the non-moving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 250). To determine whether a genuine dispute of material fact exists, the court must consider all the facts and reasonable inferences in a light most favorable to the non-movant. *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002). The Court will not "weigh the evidence and determine the truth of the matter" but will determine whether a genuine dispute necessitates a trial. *Anderson*, 477 U.S. at 249.

The party moving for summary judgment has the initial burden of proving an absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Thereafter, the nonmoving party creates a "genuine [dispute] of material fact if sufficient evidence is provided to allow a jury to find for him at trial." *Gleason v. Norwest Mort., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001). "[T]he nonmoving party 'may not rest upon mere allegation or denials of his pleading.'" *Ciafrei v. Bentsen*, 877 F. Supp. 788, 792 (3d Cir. 1994) (citing *Anderson*, 477 U.S. at 256); *see also Olympic Junior, Inc. v. David Crystal, Inc.*, 463 F.2d 1411 (3d Cir. 1972). "Indeed, 'even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.'" *Ciafrei*, 877 F. Supp. at 792 (citing *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)). To defeat summary judgment, therefore, "the nonmoving party must establish a trial-worthy issue by presenting 'enough competent evidence to enable a finding favorable to the nonmoving party.'" *Id.* (citing *Goldman*, 985 F.2d at 1116.)

**III. Parties' Positions**

The Police Defendants argue that the majority of the claims in Plaintiff's Complaint are barred by the statute of limitations (Police Defs.' Moving Br. 4-7), the police department is not a "person" amenable to suit under Section 1983 (*id.* at 7-8), and in any event, Plaintiff cannot establish a cause of action against any of the Police Defendants (*id.* at 9-18). Township Defendants also argue that certain claims are time barred (Twp. Defs.' Moving Br. 12-13), Plaintiff has not established a municipal custom or policy, the Town Council and Mayor's Office are improper Defendants (*id.* at 7-11), and Plaintiff cannot establish the elements of his claims (*id.* at 7-18). Plaintiff opposes both motions and argues that his claims are timely and that he has set forth sufficient evidence to proceed to a jury. (*See generally* Pl.'s Opp'n to Police Br., ECF No. 24; Pl.'s Opp'n to Twp. Br., ECF No. 23.)

**IV. Discussion**

**A. Timeliness**

Defendants argue that Plaintiffs' Section 1983 claims are barred by the Statute of Limitations. (Police Defs.' Moving Br. 4-7, ECF No 18-1; Twp. Defs.' Moving Br. 12-13, ECF No. 17-1.) The parties agree that a two-year statute of limitations applies to the Section 1983 claims. (Police Defs.' Moving Br. 4; Twp. Defs.' Moving Br. 12; Pl.'s Opp'n to Twp. Br. 20-21, ECF No. 23-18; Pls.' Opp'n to Police Defs.' Br. 15, ECF No. 24-24.) The parties, however, dispute when the claim accrued. Defendants argue that the claim accrued when Plaintiff was separated from the Auxiliary Police Department. (Police Defs.' Moving Br. 4-7.) Plaintiff, however, argues that he did not sustain any damage until he was "forced to return his department materials on July 3, 2014." (Pl.'s Opp'n to Police Defs.' Br. 15.) Plaintiff further argues that "[t]o the extent . . . Mr. Schwartz suffered a consequential injury before July 3, 2014, the continuing violation doctrine

warrants finding that those claims were timely filed." (*Id.* at 16.) Further, Plaintiff argues that if the injury occurred in April 2014, "the discovery rule would toll the limitations period until July 3, 2014" which Plaintiff believes is when "a reasonable person would know of sufficient facts to realize he was injured." (*Id.* at 16-17.)

Plaintiff's arguments on this point are disingenuous. Plaintiff cannot claim that he was not aware of a violation until Plaintiff actually returned his equipment on July 3, 2014, after the Township's attorney advised Plaintiff's attorney that Plaintiff's equipment was still outstanding. First, the record reflects that Plaintiff was advised to return these materials when he was separated from the Auxiliary Police in April. (Certification of Joseph DiRenzo, Ex. S, ECF No. 23-12.) Further, Plaintiff filed a Notice of Tort Claim on July 1, 2014—before the date he returned his equipment. Clearly, Plaintiff was aware of his claim before he was ordered, again, to return his department materials on July 3, 2014. The fact that Plaintiff waited until this point to actually return the materials (which is unsupported by any citation to the record) does not support a finding that this is the date he was damaged.[7] To the contrary, the alleged retaliation, and thus, Plaintiff's damage, occurred on the date of separation.

The Court further finds that the continuing violation doctrine is not applicable. Termination is a discrete, independent act that is actionable at the time it occurs. *O'Connor v. City*

---

[7] In his brief, Plaintiff also claims that he "filed this suit within 2 years of the rejection of his appeal request for the discipline that was imposed." (Pl.'s Opp'n to Police Defs.' Br. 2.) There is nothing in the record, however, that indicates Plaintiff appealed his discipline or that an appeal was denied. Instead, the record shows that on April 28, 2014, counsel for Plaintiff wrote to the Police Chief asking for information about how to appeal. (DiRenzo Cert. Ex. R, ECF No. 23-16.) From the record before the Court, however, no appeal follows, and it is unclear whether an "appeal" process even exists. The next correspondence provided is the July 3, 2014 letter from the Township Attorney to counsel for Plaintiff again demanding return of Township property. (DiRenzo Cert. Ex. S, ECF No. 24-17.) Nothing in the letter references an appeal or denial of an appeal. (*Id.*) The Court, therefore, finds that there is no support in the record for Plaintiff's claim that an appeal occurred or was denied, or that July 3, 2014 is somehow the date of denial.

9

of Newark, 440 F.3d 125, 127 (3d Cir. 2006). Discrete acts "must be raised within the applicable limitations period or they will not support a lawsuit." (*Id.*) "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).

The Court accordingly finds that Plaintiff's claim accrued on the date of separation in April 2014. As Plaintiff did not file this lawsuit until June 2016, the Section 1983 claims premised on Plaintiff's separation from the Auxiliary Police Department are time-barred.[8]

**B.** **Alleged Interference with Potential Employment**

The only timely claim, therefore, is based on the allegations that an unidentified person from Toms River interfered with Plaintiff's prospective employment in Manchester Township and that an Officer from Toms River confiscated Plaintiff's personal wallet badge.

1. *Monell* Claims

To the extent either of these events are relevant to the Section 1983 claims, the claims fail as a matter of law on the record before the Court. Local governments are not vicariously liable under § 1983 for their employees' unconstitutional actions. *Monell v. Dep't. of Soc. Svcs.*, 436 U.S. 658, 707-08 (1978). "Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. To impose § 1983 liability on a municipality, therefore, a plaintiff must prove that an "official municipal policy" or custom caused his or her injuries. *Id.* at 691; *Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir. 2007). "A municipality may only be held liable under § 1983 if the plaintiff

---

[8] It is unclear from the Complaint and the briefing whether the alleged interference with Plaintiff's promised position in Manchester also forms the basis for Plaintiff's Section 1983 claims. To the extent that Plaintiffs' Section 1983 claims are also premised on this incident, the claims are not time-barred, but fail for the reasons set forth below.

identifies a municipal 'policy' or 'custom' that was the 'moving force' behind the injury." *Jewell v. Ridley Twp.*, 497 F. App'x 182, 185 (3d Cir. 2012) (quoting *Monell*, 436 U.S. at 694).

A "policy" requires "a decisionmaker possessing final authority to establish municipal policy with respect to the action" to "issue[] an official proclamation, policy, or edict." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (citations omitted)). A custom occurs when "practices of state officials [are] so permanent and well-settled as to virtually constitute law." *Id.* In either event, the plaintiff must establish that "a policymaker is responsible either for the policy or, through acquiescence, for the custom." *Andrews*, 895 F.2d at 1480. "In other words, the plaintiff must show that the municipality, through one of its policymakers, affirmatively proclaimed the policy, or acquiesced in the widespread custom, that caused the violation." *Telzer v. Borough of Englewood Cliffs*, 2018 U.S. Dist. LEXIS 61856, at *48-49 (quoting *Noble v. City of Camden*, 112 F. Supp. 3d 208, 221 (D.N.J. 2015) (internal citation omitted)).

Here, the record is completely devoid of any evidence establishing a municipal policy or custom that caused the alleged interference with Plaintiff's prospective employment in Manchester or the confiscation of his wallet badge.[9] As a matter of law, therefore, the Township, Police Department, Town Council, and Mayor's Office cannot be liable.[10]

---

[9] No party disputes that Plaintiff's speaking about the parking situation is protected political activity under the First Amendment. The Court, therefore, accepts this as true for purposes of the motions.

[10] The Court also recognizes that an "arm" of the township is not a separate legal entity for purposes of Section 1983 liability. *See Geissler v. City of Atl. City*, 198 F. Supp. 3d 389, 395 (D.N.J. 2016) (quoting *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n.4 (3d Cir. 1997). The Court, however, need not analyze which entities are properly named as there is no official policy or custom in the record that could impose liability.

2. <u>Section 1983 Claims against the Individual Defendants</u>

As to the individual defendants, Plaintiff references no information in the record that would identify who made the phone calls to the Mayor of Manchester. Plaintiff cannot maintain a claim based on mere speculation that it must have been one of the named Defendants. *See Ciafrei*, 877 F. Supp. at 792. Here, where Plaintiff cannot point to anything in the record, except for his own hearsay statement that Mayor Palmer told Plaintiff that unidentified people from Toms River were calling to pressure Mayor Palmer not to hire Plaintiff, there is no "competent evidence to enable a finding favorable to the nonmoving party" that these Defendants interfered with his prospective employment.[11] *Id.* (citing *Goldman*, 985 F.2d at 1116.)

Defendants, accordingly, are entitled to summary judgment on all Section 1983 claims.[12]

3. <u>Intentional Interference with Economic Advantage</u>

For the same reasons that the Section 1983 claim fails against the individual Defendants, Plaintiff's Intentional Interference claim fails against the Township and Kelaher. Without some

---

[11] Similarly, to the extent that Plaintiff's claim is premised on the confiscation of his wallet badge, he specifically testified that the wallet was confiscated by Officer Scalia at the direction of retired Officer Raia. (Pl.'s CSMF ¶ 119, ECF No. 22; Pl.'s Dep Tr. 79:2-13.) As such, none of the individual Defendants were involved in this incident and the Court need not analyze the issue further.

[12] Count I of Plaintiff's Complaint also discusses a "conspiracy." To the extent this is a separate claim from Plaintiff's Section 1983 retaliation claim, the record does not support any such conspiracy. To prevail on a Section 1983 conspiracy claim, a plaintiff must show that: "(1) defendants deprived him of a right secured by the Constitution or laws of the United States and (2) conspired to do so while acting under color of state law." *Savage v. Bonavitacola*, 2005 U.S. Dist. LEXIS 3695, at *36 (E.D. Pa. Mar. 9, 2005) (citing *Dennison v. Pa. Dep't of Corr.*, 268 F. Supp. 2d 387, 401 (M.D. Pa. 2003). As an initial matter, the record does not support any actionable deprivation of a constitutional right. Further, as the record fails to identify the individuals involved in the alleged incident with the Mayor of Manchester, the record cannot support a conspiracy between two or more individuals or show that they were acting under the color of law.

evidence that one of these individuals was involved, at least sufficient to create a genuine dispute of material fact, Plaintiff cannot proceed to a jury trial. *See Ciafrei*, 877 F. Supp. at 792. Here, the record is completely devoid of any evidence that Mayor Kelaher or the Township was somehow responsible for the alleged call(s). As Plaintiff has not set forth any competent evidence to create a genuine dispute of material fact, Defendants are entitled to summary judgment.

V.  **Conclusion**

For the reasons set forth herein, Defendants' motions for summary judgment are granted. An Order consistent with this Memorandum Opinion will be entered.

s/ Michael A. Shipp<br>
**MICHAEL A. SHIPP**<br>
**UNITED STATES DISTRICT JUDGE**

Dated: August 30, 2018